COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



ROBERT G. HOULE, §

        Appellant, §

v. §

JOSE LUIS CASILLAS, CASCO §
INVESTMENTS INC. AND JLC
VENTURES, INC., §
        Appellees. §
§

No. 08-17-00189-CV

Appeal from the

210th District Court

of El Paso County, Texas

(TC #2011-2614)

**O P I N I O N**

Appellant Robert G. Houle appeals from several different orders by the trial court which were not subject to review until after the court finally disposed of all claims. After Appellee Casco Investments, Inc. (Casco), filed suit against Appellant Houle, he returned fire by filing a variety of causes of action against Casco, and asserted those same claims by cross-claim against Casco's sole owner, Jose Luis Casillas (Casillas), and against JLC Ventures, Inc. (JLC Ventures), a second entity Casillas had also established. Ultimately, the trial court granted judgment in favor of Casillas, individually, and as a corporate representative of Casco and JLC Ventures (collectively, "Appellees"). The parties' suit against each other stemmed from difficulties that arose from a real estate investment and renovation project that failed to pan out as planned. For the reasons set forth below, we affirm in part, and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Parties' Agreement

Most of the facts regarding when and how the parties first entered into their business venture in the summer of 2009 are undisputed. At that time, Houle, an El Paso resident, and Casillas, a resident of Mexico, had known each other for approximately 25 years. Houle was then married to Casillas' sister, Ana Casillas, although they were in the process of divorcing after 18 years of marriage. The venture began when Houle—who worked for a bank in El Paso and harbored an interest in owning real estate—learned of a large, older home for sale in El Paso that had already been divided into apartment units. The property was located at 3901 Pershing (the "Pershing Property"). Eventually, Houle met with Casillas and the two orally agreed to purchase the property. The parties initially intended to renovate the building for resale, but soon they decided they would keep it instead and lease out the apartment units after they were renovated. Before purchasing, the parties inspected the building during which Houle informed Casillas that he believed renovations could be accomplished in three to four months, at a cost amounting somewhere between $40,000 and $50,000.

In general, the parties agreed that Casillas would provide financing for purchasing and renovating the property while Houle would apply his expertise in overseeing renovations; thereafter, once Casillas had been reimbursed for his initial investment, the parties would split profits equally regardless of whether profits arose from selling the property, or from rental income generated from leasing units. Houle further claims that the parties agreed he would be entitled to manage the property after renovations were completed.

2

In furtherance of their agreement, Houle suggested that they form a limited liability corporation (LLC) to purchase the Pershing Property with the entity to be known as the Pershing 3901 LLC ("the Pershing LLC").[1]  At Houle's suggestion, Casillas formed a separate corporation to shield himself from personal liability, which he named Casco Investments, Inc.[2]  Thereafter, Houle and Casco were named as the two sole members of the Pershing LLC.  The parties orally agreed that Casillas, in his individual capacity, would fund the project by loaning $100,000 to the Pershing LLC to purchase the property, and he would loan additional monies thereafter to fund renovations as planned.

On July 27, 2009, the Pershing LLC purchased the property for $100,000, and with Houle's agreement, Casillas took back a promissory note from the Pershing LLC, secured by a deed of trust on the property in the principal amount of $100,000 (the "original deed of trust").  The promissory note, which was dated July 27, 2009, named Casillas as lender and the Pershing LLC as borrower with the entire principal balance and all accrued unpaid interest being due and payable, in a lump sum, on or before July 31, 2010.  The note indicated that the annual interest rate "shall be the daily Prime Interest Rate during the term of the Note, with interest calculated based on the Prime Interest Rate in effect for each day during the term of the loan."  Prime Interest Rate is further defined as "the annual rate of interest identified as the 'prime rate' in the 'Money Rates' column published in the Wall Street Journal."  After the note became due and payable, the interest rate would rise to 18 percent on matured, unpaid amounts.

---

[1] The documents forming the LLC simply stated that the LLC was formed for any "lawful purpose[.]"

[2] Casco was formed on July 24, 2009, with Casillas as its president and only director.  In turn, Casco, was wholly owned by another entity that Casillas had formed in Mexico as part of his farming business, along with his mother, known as Verduras Deliciosas.

**The Year-Long Renovation Project**

The renovations began shortly after the purchase and continued for a year, until July of 2010, with Houle overseeing the project. From time to time, Houle made purchases himself and paid renovation workers using a credit card in the LLC's name, but he sought reimbursement for his expenses from Casillas. According to Houle, he submitted approximately 16 reimbursements totaling $45,030.25 in the first year of the renovations. Although Houle admitted that the project was not completed within the contemplated timeframe, he claimed that delays occurred because he ran into unexpected plumbing, draining, and electrical issues which caused renovations to require significantly longer time than he had initially estimated.

**The July 6, 2010 Memo**

On July 6, 2010, Casillas sent a detailed email to Houle outlining the parties' original agreement, i.e., to complete renovations in three to four months at cost expected to total $40,000. Casillas complained that Houle had not fulfilled his commitment given that a year had already passed, and the renovations remained incomplete despite Casillas having already spent around $40,000, or the total amount originally expected. Casillas accused Houle of making unilateral decisions, such as not hiring a general contractor, trying to do much of the work himself, and taking unauthorized "draws" in return for his work, despite the fact that there was no agreement that Houle would be reimbursed for his services. He further complained that none of the apartments had been leased and that he had not yet received any return on his investment.[3]

---

[3] We note, however, that evidence was presented showing that at least one unit was being rented out at that time. Moreover, in Casco's original petition, it was alleged that three units had been leased out, two of which had been completely renovated, and one of which was apparently leased in its original condition. That pleading was verified by Casillas as president of Casco.

4

Expressing concern over the security of his investment, Casillas requested an accounting, an updated projected budget and repair schedule, and an addendum to the promissory note to increase the interest rate. Casillas expressed that if he felt more secure in his investment he would not mind if Houle kept "delaying the project in a reasonable manner." In addition, Casillas further expressed his opinion that the property belonged to him, repeatedly referring to the property as being "mine," unless and until he received a reimbursement for his investment.[4]

The parties disagree over what occurred after the memo was sent. Houle claimed that he provided some of the requested information, including a partial proposed budget, but that Casillas refused to continue funding the renovations in July of 2010, and instead suggested that they have a meeting in September of that year. Houle recalled that the parties met, but apparently did not resolve the matter; he claims that he nevertheless did additional work on the project for which he was never compensated.

According to Casillas, however, Houle did not provide him with the requested information, and at their September 2010 meeting, Houle advised him that he no longer intended to work on the project, and thereafter refused to communicate with him; he therefore faulted Houle for breaching the agreement. Casillas recalled that he suggested they try to sell the building at that time and split any profits they might receive after Casillas was reimbursed for his investment. Casillas claimed that Houle refused to cooperate as he did not believe Casillas would get his money back if the property was sold at that time.

---

[4] At trial, Houle claimed that he hired laborers to perform work on the property, but he paid for their service by writing a check to himself, then cashed it, then paid cash to the laborer. Occasionally, he worked on the project himself. He further admitted that, although the parties never agreed to such, he did reimburse himself for some of the mileage that he had incurred in delivering parts to the project site, but claimed that he did not take any draws for the actual work that he did on the project.

**The Second Promissory Note and Deed of Trust**

Casillas thereafter contacted a law firm in El Paso (the "Gordon Law Firm"), to determine how best to protect his investment. At that point, the parties agree that Casillas had the right to foreclose on his original promissory note of $100,000. However, in order to protect his additional investment for sums he had advanced for renovations, the law firm drafted a promissory note that Casillas signed on November 15, 2010, to "memorialize" the advances that he had previously made to the Pershing LLC.[5] In addition, the law firm drafted a second deed of trust in which it identified the Pershing, LLC, as the "borrower," and Casillas as the "lender," stating that the amount owed to Casillas was $45,030.25. Marcelo Rivera, a member of the law firm, was designated as the trustee on the deed of trust. The deed stated that in order to secure payment of the obligation, the Pershing LLC, as grantor, conveyed the Pershing Property to the trustee (Rivera) in trust. The note further stated that if the Pershing LLC failed to perform any of its obligations, the lender had the right to declare any unpaid principal balance due and payable immediately, and to direct the trustee to foreclose the lien through a duly noticed foreclosure sale. The deed was dated November 15, 2010, and the maturity date was on that same date—in essence allowing Casillas to immediately start foreclosure proceedings on the deed. Casillas signed the document on December 6, 2010, in the capacity indicated as follows:

> **PERSHING 3901, L.L.C.**
>
> By: Casco Investments, Inc.
> Its: Manager
>
> BY:_____
> Jose Luis Casillas, President

---

[5] The second deed of trust references the promissory note, but the promissory note itself does not appear to be in the record. Nevertheless, both parties agreed that a promissory note was in fact executed.

According to Houle, Casillas signed this second deed of trust, as well as the promissory note, without his knowledge or consent.

Shortly thereafter, on April 8, 2011, Casillas signed a substitute trustee instrument naming another member of the Gordon Law Firm, Salena Ayoub, as substitute trustee. Casillas signed the substitute trustee instrument in the same capacity as he did the deed of trust, i.e., in his capacity as president and/or manager on behalf of either Pershing LLC or Casco Investments, Inc., rather than in his individual capacity as the lender.

On April 9, 2011, Ayoub signed a Notice of Substitute Trustee's Sale, dated April 8, 2011, stating that pursuant to the default on the second deed of trust dated November 15, 2010, the Pershing Property would be sold on May 3, 2011 at any time beginning at 10 a.m., up to three hours later, in the El Paso County Courthouse. Houle acknowledges that he received actual notice of the foreclosure sale from Casillas on or about March 14, 2011. Houle claims he sought a temporary restraining order (TRO) to prevent the foreclosure sale from going through, but after a hearing on April 8, 2011, his request was denied.[6]

On May 3, 2011, Ayoub signed a substitute trustee's deed, stating that the foreclosure sale took place on that same day at 11:55 a.m. in the designated area of the courthouse, for a sale price of $50,000, and that the buyer was "JLC Ventures, Inc.," with an address of 833 River Oaks Drive in El Paso Texas, the same address that Casillas used as his address as the "lender" in the second deed of trust. However, as Houle points out, and Casillas admits, JLC Ventures had not yet been formed; instead, at that time, the Gordon Law Firm was in the process of forming the corporation as the entity to hold title to the Pershing Property upon foreclosure. In addition, Houle claimed

---

[6] We note that the appellate record does not contain any documents pertaining to the TRO proceedings.

7

that he was at the courthouse at the appointed time, but did not observe a sale take place, and alleges that the sale was therefore a "fiction."

## The Parties' Pleadings

On June 29, 2011, Casco, the corporate entity wholly owned by Casillas, filed suit against Houle in his individual capacity. Casco alleged Houle had breached his fiduciary duties owed to Casco and to the Pershing LLC, had engaged in wrongful, fraudulent, and unauthorized conduct, and had impaired Casco with abusive self-dealing. In addition to damages, Casco sought a declaratory judgment, inspection of corporate books and records, and an accounting, among his many claims. Casco further asserted that it intended to wind up the Pershing LLC.

On September 22, 2011, Houle filed a denial of Casco's claims along with a combined counterclaim against Casco and third-party complaint against Casillas and JLC Ventures. Seeking affirmative relief, Houle asserted a variety of claims to include breach of contract, breach of fiduciary duty, and trespass. In addition to damages, Houle sought a constructive trust over the subject property, an accounting of income and expenses, a partition of the property, and an award of quantum meruit for the reasonable value of his unpaid labor. Thereafter, on November 15, 2013, Houle filed a first amended counterclaim and third-party petition, in which he reasserted his original claims and added claims for "money had and received," for "conversion," and for a "violation of Texas Business Organizations Code" arising from unilateral actions by Casillas, Casco, and/or JLC Ventures, in procuring the second deed of trust used to foreclose on the property. After he obtained a new attorney, Houle then filed a second amended counterclaim and third-party petition on April 19, 2016, which remained the live pleading of Houle's claims against Appellees.

In his live pleading, Houle incorporated by reference paragraphs 5 through 76 of his first amended pleading relating to his denial of Casco's allegations and his affirmative defenses. The second amended pleading alleged that Casillas and Houle were partners, and that Casillas—both in his individual capacity and as president of Casco—owed him a fiduciary duty and duty of good faith and fair dealing. Houle alleged that these duties were violated when Casillas ceased advancing funds to him and when Casillas obtained the second deed of trust without notice to him, leading to what Houle labelled as the "fraudulent" and "completely fictitious" foreclosure sale of the property. Houle further alleged that Casillas controlled both Casco and JLC Ventures, and that he used those entities "to perpetrate fraud and engage in unjust enrichment." Although Houle's second amended pleading is somewhat vague about which causes of action are asserted, when construed liberally Houle appears to allege a claim for breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, fraud, and unjust enrichment.

Houle claimed that he was damaged as a result of the allegedly tortious and fraudulent conduct of Casillas "and his corporate entities," citing his loss of time, labor and "business opportunity." He asked for an accounting of "all receipts, expenses, and profits concerning the Property since 2010," and asked the trial court to "award the past receipt[s] and profits" from the property to Houle as damages, together with attorney's fees and punitive damages for the alleged fraud. And finally, Houle asked the court for a "Declaratory Judgment declaring the rights of the parties and imposing a constructive trust [on the subject property,] if necessary[,] and for such other and further relief as to which Houle shall show himself justly entitled."

**The Parties' Motions for Summary Judgment**

9

Houle filed a motion for partial summary judgment (albeit on a request for relief not set forth in his second amended pleading), asking that the trial court "set aside" the foreclosure sale of the property based on his allegation that the purported conveyance was "fatally defective." He argued that the substitute trustee (Ayoub) had not been properly appointed given that Casillas had made the appointment in his capacity as president/manager of Casco rather than as the original lender of the outstanding debt.[7] Following a hearing held on July 29, 2016, the trial court denied Houle's motion by written order signed on August 5, 2016, without elaboration.[8]

Thereafter, Casillas, as a third-party defendant, filed his first motion for summary judgment, as both a no-evidence and traditional motion, arguing that Houle had no evidence to support any of his causes of action, challenging all elements of Houle's claims, and arguing that Houle owed no fiduciary duties to Houle as a matter of law. In his motion, Casillas identified five causes of action that Houle had alleged in his live pleading as follows: (1) fraud; (2) unjust enrichment; (3) breach of contract; (4) breach of fiduciary duty; and (5) breach of the implied covenant of good faith and fair dealing.[9] Casillas also requested that the court sever Houle's claims and causes of action against him from the balance of the case, to create a final and appealable order in the event the court granted Casillas' motion.

---

[7] As explained below, Houle filed a third amended pleading months later in which he requested that the foreclosure sale be set aside, but the trial court ultimately struck that pleading.

[8] The reporter's record of this hearing is not included in the appellate record.

[9] In his motion, Casillas also stated that Houle had alleged a sixth cause of action, i.e., "criminal enterprise." However, it does not appear that Houle ever raised that claim in any of his pleadings, and he does not address that claim on appeal. Moreover, in response to Casillas' first motion for summary judgment, Houle expressly stated that he did not intend to raise a claim of "criminal enterprise," but that he did intend to raise a civil RICO claim as the result of "the wire fraud (use of the internet and email) and mail fraud (sending notices of acceleration and foreclosure through the mails) and the existence of a criminal enterprise (CASCO INVESTMENTS, INC.) which is used to perpetrate those frauds." Houle, however, never actually alleged a RICO claim in any of his pleadings, and also fails to discuss any purported RICO claim on appeal.

Houle filed his response to Casillas' motion in which he attached as evidence (1) the memo of July 6, 2010; and (2) his own affidavit. Houle asserted that a partnership had been formed between himself and Casillas which gave rise to fiduciary duties owed to each other. Houle asserted that Casillas had breached their agreement, had engaged in a fraudulent course of conduct in foreclosing on the Pershing Property, and had been unduly enriched by taking sole control of the property without any compensation to Houle. After a hearing, the trial court granted Casillas' motion in part, dismissing Houle's claims for unjust enrichment and for breach of fiduciary duty and the implied covenant of good faith and fair dealing; but allowed Houle's breach of contract and fraud claims to proceed to trial.[10]

### The Recusal and Mistrial

The matter then went to trial on Houle's two remaining claims on February 21, 2017. After hearing testimony from several witnesses, including Houle and Casillas, Houle's attorney made a motion to recuse the trial court contending that the court had exhibited "bias" throughout the proceedings. After a conference held off the record, the trial court granted Houle's motion to recuse and his motion for a mistrial. On February 22, 2017, the trial court issued a written order of recusal and the matter was assigned to a new judge.

### Casillas' Second Motion for Summary Judgment

Shortly thereafter, on March 15, 2017, Casillas filed his second motion for summary judgment, seeking dismissal of Houle's two remaining claims for breach of contract and fraud. In the motion, Casillas challenged all elements of Houle's fraud claim, arguing that Houle had no

---

[10] At the hearing on Casillas' motion, Casillas orally objected to Houle's affidavit, alleging that it was not competent evidence, that it consisted solely of hearsay and unsupported opinions. However, it does not appear that the trial court ruled on that objection.

11

evidence to establish that Casillas had made a material and false representation upon which he intended for Houle to rely. In addition, Casillas also contended that Houle had no evidence to establish that he was "injured or damaged" as a result of Casillas' allegedly fraudulent conduct. With regard to the breach of contract claim, Casillas challenged only the element of damages, claiming that the parties had agreed to sell the property following the renovations, and that the undisputed evidence demonstrated that the property was now worth less than the amount that Casillas was owed.

Houle responded to the motion attaching a more detailed affidavit setting forth how he believed he was damaged, primarily arguing that the parties did not agree to sell the property, and that instead, they had agreed to keep the property, lease out the apartment units, then split the profits from the rental income; further, Houle averred that the parties had agreed that he would serve as property manager at that time, thereby characterizing his damages as primarily being the loss of a business opportunity. In addition, he claimed that he had been damaged by the fact that he was not compensated for the work that he performed during the year-long renovation project. In his affidavit, he provided a detailed assessment of what he believed the units in the apartment would have rented for, the amount of money he would have received for managing the property, and provided his estimate of the value of the work he performed on behalf of the alleged partnership. He also attached a spreadsheet describing the work that had been performed on the project.

### Casillas' Objections to Houle's Second Affidavit

On April 26, 2017, Casillas filed objections to Houle's second affidavit, and its attachments, arguing in general, that Houle was an "interested witness," and that his affidavit did

12

not provide testimony that was "clear, positive, direct, credible, free from contradiction, and uncontroverted," as required by TEX. R. CIV. P. 166a(c). On May 17, 2017, Casillas filed more detailed objections to Houle's affidavit, objecting with more particularity to each paragraph in the affidavit, raising various objections to the affidavit, including hearsay objections, objections based on the statute of frauds, objections based on Houle's reference to documents not attached to the affidavit, objections to statements considered to be uncorroborated and self-serving "opinions" and/or impermissible "legal conclusions."

After a hearing, the trial court issued two orders with both dated May 30, 2017. First, the court issued evidentiary rulings granting and denying a variety of objections raised against Houle's affidavit. Second, the trial court granted Casillas' second motion for summary judgment dismissing Houle's two remaining causes of action filed against Casillas, individually, and in his representative capacity for Casco and JLC Ventures.

**Houle's Motion for New Trial**

On June 28, 2017, Houle filed a motion for new trial, urging the trial court to reconsider its order granting Casillas' objections to his affidavit; the two orders granting Casillas' motions for summary judgment, and the trial court's earlier order denying Houle's motion for partial summary judgment. In support of his motion, Houle attached his response to Casillas' requests for disclosure, in which he had identified himself as an expert witness who would testify as to the "value of the real estate in issue in this case, knowledge of business procedures, and valuation of damages," together with his resume. The trial court held a hearing on Houle's motion for new trial on July 19, 2017, and at the close of the hearing denied the motion. Thereafter, the trial court

13

granted Casillas' motion for non-suit, dismissing its claims against Houle, thereby leaving no claims pending in the trial court. This appeal followed.

## DISCUSSION

On appeal, Houle argues that the trial court erred by denying his motion for partial summary judgment, and by granting two motions for summary judgment asserted by Casillas, individually, and in his representative capacity on behalf of Casco and JLC Ventures (collectively, Appellees). As well, Houle argues that the trial court erred by granting Casillas' objections to his second summary judgment affidavit, and by striking a third amended pleading that he attempted to file after the mistrial was declared.

For clarity, we will number each argument then address each in turn. As a preliminary matter, we first discuss the state of the parties briefing of this appeal.

## BRIEFING ISSUES

Initially, Houle's opening brief included inadequate citations to the record and few citations, if any, to legal authorities relied on in support of his positions. Citing to Texas Rule of Appellate Procedure 38.1, the responsive brief filed by Appellees Casillas, Casco, and JLC Ventures, collectively, argued almost exclusively that Houle had waived error, if any, wholly based on inadequate briefing.[11] In reply, Houle requested permission to file an amended brief, which he attached with his request. Appellees argued in response that the amended brief continued to violate Rule 38.1, and, in any event, it would be unfair to allow Houle to file his amended brief as

---

[11] Rule 38.1(g) provides that: "The brief must state concisely and without argument the facts pertinent to the issues or points presented. In a civil case, the court will accept as true the facts stated unless another party contradicts them. The statement must be supported by record references." TEX. R. APP. P. 38.1(g). In addition, Rule 38.1(i) provides that: "The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i).

Appellees had based their own argument on briefing waiver.  Over Appellees' objection, we granted Houle permission to file his Amended Appellant's Brief on July 6, 2018.  We note here that Appellees never sought permission to file their own amended response to address the merits of Houle's arguments, nor did they ask for a reconsideration of our decision allowing amended briefing by Houle.  Accordingly, we proceed with our discussion without benefit of a response on the merits from Appellees.

### ISSUE ONE: THE DENIAL OF HOULE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On appeal, Houle argues first that the trial court erred in denying his motion for partial summary judgment voiding the substitute trustee's deed.  Houle asserts that Ayoub's appointment as substitute trustee was unlawful and the foreclosure sale itself was "fatally defective."  Rather than address the merits of these arguments, Appellees contend that the denial of Houle's motion is not reviewable on appeal given that Houle had failed to seek a final judgment in his motion for partial summary judgment.  We agree with Appellees.

Under Texas law, a cause of action for wrongful foreclosure has three elements: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *See Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.); *see also University Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (a plaintiff seeking damages for wrongful foreclosure must show that (1) there was an irregularity in the foreclosure sale and (2) the irregularity caused the plaintiff damages); *Sotelo v. Interstate Financial Corp.*, 224 S.W.3d 517, 523 (Tex. App.—El Paso 2007, no pet.) ("The elements of wrongful foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an

15

inadequate price."). "The purpose of a wrongful foreclosure action is to protect mortgagors against those sales where, through mistake, fraud, or unfairness, the sale results in an inequitably low price." *In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001). To void a foreclosure sale, there must be both grossly inadequate consideration, and evidence that there was an irregularity in the sale that contributed to the inadequate sale price. *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975). An individual who has been dispossessed of property through a wrongful foreclosure may request that the sale be set aside, or in the alternative, seek damages equal to the difference between the value of the property and the indebtedness. *See Pinnacle Premier Prop., Inc. v. Breton*, 447 S.W.3d 558, 565 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 593–94 (Tex. App.—Dallas 2012, no pet.); *see also University Savings Ass'n*, 644 S.W.2d at 706; *UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc.,* 176 S.W.3d 595, 610 (Tex. App.—Corpus Christi 2005, pet. denied) (citing *Univ. Sav. Ass'n,* 644 S.W.2d at 706) (failure to properly foreclose on property gives rise to a cause of action for either the return of the property or damages).

Here, Houle's petition neither raises a claim for wrongful foreclosure, expressly nor impliedly, nor does he seek the remedy of setting aside the foreclosure sale. Unlike his motion, his petition does not allege irregularities either in Ayoub's appointment or in the foreclosure sale itself. Moreover, Houle did not ask that the foreclosure sale be set aside. Instead, it appears that Houle first raised a complaint about Ayoub's appointment in his motion for partial summary judgment. Even in his motion, however, Houle does not explain how Ayoub's appointment—

16

whether improper or not—resulted in an inadequate selling price. This failure is significant in several respects.

By the very nature of a summary judgment proceeding, a plaintiff may only move for summary judgment on a cause of action that has been actually pleaded. *See* TEX. R. CIV. P. 166a(a) ("A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."); *see generally Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (recognizing that a plaintiff moving for summary judgment must conclusively prove all essential elements of its claim) (citing *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986); *see Geiselman v. Cramer Fin. Group, Inc.,* 965 S.W.2d 532, 535 (Tex. App.—Houston [14th Dist.] 1997, no writ)). Moreover, it is fundamental that the motion for summary judgment must be supported by the pleadings on file, and the final judgment of the court must conform to those pleadings. *See, e.g.,* 68 Tex. Jur. 3d Summary Judgment § 60 n.4 (citing *Galtex Property Investors, Inc. v. City of Galveston*, 113 S.W.3d 922 (Tex. App.—Houston 14th Dist. 2003, no pet.); *Elite Towing, Inc. v. LSI Financial Group*, 985 S.W.2d 635 (Tex. App.—Austin 1999, no pet.)). Therefore, a trial court's order denying a motion for summary judgment on a claim that was not raised by the pleadings in effect leaves nothing for this court to review. *See generally Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 871–72 (Tex. App.—San Antonio 1997, no writ) (where even the most liberal reading of the plaintiff's petition supports the conclusion that he has never asserted a claim for breach of contract, irrespective of the partial summary judgment

17

granted on that basis, thus, any complaint on appeal with regard to contractual breaches is inappropriate, and presents nothing for review on appeal).

Moreover, as Appellees point out, the denial of a motion for summary judgment is not typically considered reviewable as it is not considered a final judgment. *See, e.g., Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (citing *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex. 1980)). The only exception to this rule is when the parties have filed competing and/or cross-motions seeking summary judgment, and the trial court grants one and denies the other; in that instance, an appellate court may review both motions and render the judgment the trial court should have rendered. *See, e.g., Holmes v. Morales,* 924 S.W.2d 920, 922 (Tex. 1996) (citing *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988) (recognizing that when both parties move for summary judgment, the non-prevailing party may appeal both the prevailing party's motion as well as its own)); *see also Southern Crushed Concrete, LLC v. City of Houston,* 398 S.W.3d 676, 678 (Tex. 2013) (when both parties move for summary judgment and the trial court grants one motion and denies the other, an appellate court reviews both sides' summary judgment evidence and renders the judgment the trial court should have rendered); *Lopez-Franco v. Hernandez*, 351 S.W.3d 387, 391 (Tex. App.—El Paso 2011, pet denied) (when both sides move for summary judgment and the trial court grants one motion and denies the other, the court of appeals reviews the summary judgment proof presented by both sides and determines all questions presented). Moreover, an appellate court must review all of the summary judgment grounds on which the trial court actually ruled, whether granted or denied, which are dispositive of the appeal regardless of whether the competing motions were filed at the same time. *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5–6 (Tex. 1999).

Nevertheless, as Appellees point out, various courts have held that in order for this exception to apply both parties must have sought a *final* judgment in their competing or cross-motions for summary judgment, and the filing of a motion for partial summary judgment does not bring the case within the scope of the exception. *See Fair v. Arp Club Lake, Inc.,* 437 S.W.3d 619, 628 (Tex. App.—Tyler 2014, no pet.) (where appellant's cross-motion for partial summary judgment did not seek a final judgment, its denial was not reviewable) (citing *In re D.W.G.,* 391 S.W.3d 154, 164 (Tex. App.—San Antonio 2012, no pet.)); *see also Cowboy's Retail & Wholesale Beverage Distribution, LLC v. Davis*, No. 12-14-00085-CV, 2015 WL 6165884, at *3 (Tex. App.—Tyler Oct. 21, 2015, pet. denied) (mem. op.) (the denial of a cross-motion for summary judgment is reviewable only if that cross-motion sought a disposition of all claims in the trial court); *Shaw v. Shaw*, 835 S.W.2d 232, 235 (Tex. App.—Waco 1992, writ denied) (although the partial summary judgment was merged into the final judgment and became appealable at that time, the denial of appellant's motion for a partial summary judgment was interlocutory and not appealable). Moreover, the parties must have filed competing motions for summary judgment on the same issue for the exception to apply. *See generally CU Lloyd's of Texas v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (in order to come under the exception to the general rule that the denial of a motion for summary judgment is not appealable, both parties must have sought final judgment relief in cross-motions for summary judgment or moved for summary judgment on the same issue) (citing *Bowman v. Lumberton Indep. Sch. Dist.,* 801 S.W.2d 883, 889-90 (Tex. 1990)).

Here, Casillas did not file a competing motion for summary judgment with respect to a claim of wrongful foreclosure, as Houle never raised such a claim in his pleadings. Instead, Casillas moved for final summary judgment listing five causes of action he believed Houle had

19

raised in his live pleadings, and his motion did not include wrongful foreclosure among the causes of action that he challenged. In his response, Houle did not correct Casillas' assertion and appeared to acquiesce to Casillas' characterization of claims asserted. More importantly, the trial court's two orders addressing Casillas' motions for summary judgment, taken together, only addressed the five claims discussed in Casillas' motions, and the trial court therefore never rendered judgment on any claim for wrongful foreclosure. Therefore, we conclude that a claim of wrongful foreclosure was not properly before the Court.[12] Issue One is overruled.

## ISSUE TWO: THE GRANTING OF APPELLEES' FIRST MOTION
## FOR SUMMARY JUDGMENT

In Issue Two, Houle contends that the trial court erred in granting summary judgment on his three claims for unjust enrichment, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. In their brief, Appellees devote two sentences in responding to Houle's arguments. First, Appellees state in a single sentence that Houle "failed to produce more than a scintilla of evidence as to unjust enrichment, breach of fiduciary duty and criminal enterprise." And second, Appellees argue that the trial court properly granted summary judgment as there is no tort involving an implied covenant of good faith and fair dealing.

### Standard of Review

---

[12] We recognize that Houle did request that the foreclosure sale be set aside in his third amended pleading; however, the trial court later struck this pleading. Thus, the trial court did not consider Houle's third amended counter-claim at the time it considered his motion for partial summary judgment, and on appeal, our review of the court's ruling is limited to only what was before the trial court at the time it made its ruling. *See generally Felhaber v. Pieper*, No. 08-02-00351-CV, 2003 WL 22015551, at *3 (Tex. App.—El Paso Aug. 26, 2003, no pet.) (mem. op.) (in considering a motion for summary judgment, a trial court may consider only the evidence on file at the time of the hearing or filed thereafter and before judgment with permission of the court) (citing Tex. R. Civ. P. 166a(c); *Leinen v. Buffington's Bayou City Service Co.,* 824 S.W.2d 682, 685 (Tex. App.—Houston [14th Dist.] 1992, no writ)).

20

On appeal, we review a trial court's order granting both no-evidence and traditional motions for summary judgment *de novo.* *See Border Demolition & Envtl., Inc. v. Pineda*, 535 S.W.3d 140, 151 (Tex. App.—El Paso 2017, no pet.) (citing *Valence Operating Company v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005)); *see also Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When, as here, a party has moved for summary judgment on both no-evidence and traditional grounds, we first review the no-evidence grounds. *See Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). If we conclude that the trial court properly granted the no-evidence summary judgment motion, we need not address the traditional motion to the extent that it addresses the same claims. *See Lightning Oil Co.,* 520 S.W.3d at 45 (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).

No-evidence motions for summary judgment are governed by Rule166a(i) of the Texas Rules of Civil Procedure, which requires a movant to allege that adequate time for discovery has passed and that the non-movant still has no evidence to support one or more essential elements of a claim for which the non-movant would bear the burden of proof at trial. *See Stierwalt v. FFE Transp. Services, Inc.,* 499 S.W.3d 181, 194 (Tex. App.—El Paso 2016, no pet.) (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015)); TEX. R. CIV. P. 166a(i). The motion must specifically state the elements as to which the movant contends there is no evidence. TEX. R. CIV. P. 166a(i); *see also Timpte Industries, Inc. v. Gish,* 286 S.W.3d 306, 310 (Tex. 2009); *Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex. App.—El Paso 2013, no pet.). The burden thereafter shifts to the non-movant to produce at least a scintilla of evidence to raise a genuine issue of material fact regarding each challenged element. TEX. R. CIV. P.

166a(i); *see also Lightning Oil Co.,* 520 S.W.3d at 45; *Smith v. O'Donnell,* 288 S.W.3d 417, 424 (Tex. 2009); *Wade Oil & Gas*, 417 S.W.3d at 540. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Although the nonmoving party is not required to marshal all of his proof in response to a summary judgment motion, he must present countervailing evidence that raises a genuine fact issue on the challenged elements. *Duchene v. Hernandez*, 535 S.W.3d 251, 258 (Tex. App.—El Paso 2017, no pet.) (citing *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX. R. CIV. P. 166a)). The non-movant fails in their burden of creating a fact issue when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas*, 417 S.W.3d at 540; *see also Lozano v. Lozano*, 52 S.W.3d 141, 145 (Tex. 2001); *see also Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

The movant for traditional summary judgment bears the burden of proving there is no genuine issue of material fact as to at least one essential element of the challenged cause of action. *Lightning Oil Co.,*520 S.W.3d at 45 (citing TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017)); *see also Amedisys, Inc. v. Kingwood Home Health Care, LLC,* 437 S.W.3d 507, 511 (Tex. 2014). If the initial burden is met, the burden then shifts to the non-movant to raise an issue of fact, and in order to do so, the non-movant must come forward with more than a scintilla of evidence. *Amedisys, Inc.*, 437 S.W.3d at 511; *see also Chance v. Elliot & Lillian, LLC*, 462 S.W.3d 276, 283 (Tex. App.—El Paso 2015, no pet.); *Ciguero v. Lara*, 455 S.W.3d 744, 747 (Tex. App.—El Paso 2015, no pet.). If the initial burden is not satisfied, the non-movant need not respond or present any evidence. *See Amedisys, Inc.,* 437

22

S.W.3d at 511; *see also State v. Ninety Thousand Two Hundred Thirty–Five Dollars and No Cents in U.S. Currency ($90,235),* 390 S.W.3d 289, 292 (Tex. 2013) (citing *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000) (per curiam)).

In reviewing the granting of a traditional or a no-evidence motion for summary judgment, we review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Pineda*, 535 S.W.3d at 151 (citing *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006)); *see also Lightning Oil Co.*, 520 S.W.3d at 45. We further indulge every reasonable inference in favor of the non-movant and resolve any doubts against the motion. *Lightning Oil Co.,*520 S.W.3d at 45 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). If the trial court's order does not specify the grounds on which the summary judgment was granted, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003); *see also FM Properties Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–73 (Tex. 2000) (citing *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex. 1995)).

### A. Houle's Claims For Breach of Fiduciary Duty and the Implied Covenant of Good Faith and Fair Dealing

We first note that under Texas law not all contracts contain an implied covenant of good faith and fair dealing. *Saucedo v. Horner,* 329 S.W.3d 825, 831–32 (Tex. App.—El Paso 2010, no pet.) (citing *City of Midland v. O'Bryant,* 18 S.W.3d 209, 215 (Tex. 2000)); *see also English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983) (expressly rejecting the inclusion of a general implied covenant of good faith and fair dealing in Texas contracts). Nonetheless, it is recognized that the

23

duty of "good faith and fair dealing" is one of many duties that fiduciaries owe to each other. *Saucedo,* 329 S.W.3d at 831–32 (citing *City of Midland,* 18 S.W.3d at 215); *see generally Fred Loya Ins. Agency, Inc. v. Cohen,* 446 S.W.3d 913, 919 (Tex. App.—El Paso 2014, pet. denied) (citing *Vogt v. Warnock,* 107 S.W.3d 778, 782 (Tex. App.—El Paso 2003, pet. denied) (in general, a fiduciary owes his principal a high duty of good faith, fair dealing, honest performance, and strict accountability)). Therefore, we combine our discussion of Houle's claim for breach of fiduciary duty and his claim of breach of the implied covenant of good faith and fair dealing, as both involve a threshold question of whether Casillas did in fact owe a fiduciary duty to Houle. *See, e.g., First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (the elements of a claim for breach of fiduciary duty are: "(1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages").

In his response to Casillas' motion for summary judgment, Houle argued that he and Casillas were in a partnership, albeit an informal one, to purchase and renovate the Pershing Property, and that under Texas law, partners owe each other a fiduciary duty. In support of his argument, Houle attached a copy of the July 6, 2010 memo from Casillas, which chronicled the history of the parties' agreement and their relationship.[13] In addition, Houle submitted his own affidavit asserting facts about the parties' agreement and intended partnership.[14] In his affidavit, Houle averred that he and Casillas had orally agreed to a partnership for the purpose of purchasing

---

[13] Houle alternatively argued that this same fiduciary relationship and duty to each other would still be owed even if the court labeled the parties' agreement as a "joint venture" rather than a partnership. Finding sufficient evidence of a partnership, we need not address this alternative argument.

[14] At the hearing on Casillas' motion, Casillas orally objected to Houle's affidavit, alleging it was not competent evidence because it consisted solely of hearsay and personal opinions without supporting evidence. However, it does not appear that the trial court ruled on Casillas' objection, and in any event, much of what Houle averred in his affidavit regarding the parties' agreement was confirmed by the July 6, 2010 memo that Houle attached to his response.

and renovating the Pershing Property, and they further agreed they would form the Pershing LLC to effectuate their agreement and partnership.

At a hearing held on January 20, 2017, Casillas argued there was no evidence of a partnership or other relationship that would give rise to any such duties, arguing that any such partnership was required to be in writing. In addition, Casillas pointed out that the parties had formed an LLC, which it argued had taken the place of any pre-existing partnership, and he argued that members of an LLC do not owe each other any fiduciary duties.

### *Fiduciary Duties Owed in Partnership Relationships*

As a preliminary matter, we note that most informal relationships, such as friendships or even familial relationships, will not necessarily give rise to any special relationship that imposes fiduciary duties on the parties. *Jones v. Thompson*, 338 S.W.3d 573, 583–84 (Tex. App.—El Paso 2010, pet. denied) (mere subjective trust resulting from an informal and confidential relationship does not create a fiduciary relationship) (citing *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 177 (Tex. 1997) (Texas courts are reluctant to recognize informal fiduciary relationships)). Nor does a fiduciary relationship exist in an ordinary lender-borrower relationship. *Id.* (citing *Wil–Roye Inv. Co. II v. Washington Mut. Bank, FA,* 142 S.W.3d 393 (Tex. App.—El Paso 2004, no pet.); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.,* 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ)).

However, the Texas Supreme Court has recognized that in certain formal relationships, including partnerships, a fiduciary duty arises as a matter of law. *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998); *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex. 1998). As the Court explained, "[t]he relationship between ... partners ... is fiduciary in character, and

25

imposes upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise." *Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 264 (1951) (quotation omitted); *Bohatch,* 977 S.W.2d at 545; *see also Home Comfortable Supplies, Inc. v. Cooper,* 544 S.W.3d 899, 907 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (partners share "the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise").

It is less clear, however, whether members of an LLC owe each other a fiduciary duty. Chapter 101 of the Texas Business Organizations Code, also known as the Limited Liability Act, which establishes the existence of LLCs, is silent on whether such a duty is imposed, and at least one of our sister courts has held that the Act does not itself impose a fiduciary duty upon members of an LLC, and that it would be improper to impose such a duty as a matter of law. *Suntech Processing Sys., L.L.C. v. Sun Communications, Inc.,* No. 05-99-00213-CV, 2000 WL 1780236, at *6–7 (Tex. App.—Dallas December 5, 2000, pet. denied). By analogizing LLCs to closely-held corporations, *Suntech* concluded that such a duty may nevertheless arise between members based, at least in part, in situations in which the members are in "unequal" positions of power, such as when one member exercises superior control over the LLC. *Id.*, at *6–7. In that instance, the court held that the existence of a fiduciary relationship is a fact question. *Id.*; *see also Kaspar,* 755 S.W.2d at 155 (recognizing that except in limited circumstances, the existence of a fiduciary relationship is a fact question); *see generally In re Lau*, 2013 WL 5935616, at 27 (Bankr. E.D. Tex. 2013) (noting that Chapter 101 of the Texas Business Organizations Code does not directly address duties owed by LLC managers and members but implies that certain duties may be owed

and allows contracting parties to address duties in their LLC agreement).[15]   Nevertheless, we note that Houle does not appear to be arguing that Casillas owed him a duty as a fellow member of the LLC, and instead, appears to find the fiduciary relationship in a pre-existing, albeit oral and informal partnership, which he claims was formed when he and Casillas entered into their agreement to purchase and renovate the Pershing Property, and that they formed the LLC simply as a means of effectuating their pre-existing partnership.   And to this extent, we agree with this argument.

The fact that the parties agreed to form an LLC to effectuate their agreement does not preclude the possibility that the parties already had a pre-existing—and continuing—partnership. In this regard, the present case is similar to the facts set forth in *Cielo Vista Bank v. McCutcheon*, 719 S.W.2d 658 (Tex. App.—El Paso 1986, writ ref'd n.r.e.).   In *McCutcheon*, two businessmen agreed to open an automobile dealership and to share the profits. *Id.* at 661. The two men then formed a corporation for the purpose of buying a piece of property on which to establish the car lot.   *Id*. at 659.   From that point on, we concluded that the two businessmen were either "partners or incorporators," which in turn created a fiduciary relationship, and therefore, they owed "each other the duty of utmost good faith."   *Id*. at 660-61.   We noted that trust amongst businessmen will not establish a fiduciary relationship, but the "agreement to purchase and the eventual purchase of the property were within the scope of the duties arising from the prior relationship," and that this agreement was sufficient to create a fiduciary duty between the two men.   *Id.* at 661

---

[15] For example, section 101.401 of the Texas Business Organizations Code provides that a "company agreement of a limited liability company may expand or restrict any duties, including fiduciary duties, and related liabilities that a member, manager, officer, or other person has to the company or to a member or manager of the company[,]" thereby also suggesting the existence of a fiduciary duty between members.   TEX. BUS. ORGS. CODE ANN. § 101.401.

27

(citing *Winchester Oil Company v. Glass,* 683 S.W.2d 35, 39 (Tex. App.—Texarkana 1984, no writ)). As in *McCutcheon*, the relationship at issue here, between Houle and Casillas, predates the creation of the LLC and continued long after its formation. We therefore must next determine whether in fact the parties' relationship can be considered a partnership.

In the trial court, Casillas argued that a partnership was not formed, primarily because the parties did not sign a written agreement to that effect. The fact that a written agreement was not signed, however, is not dispositive of the question of whether a partnership was actually formed, as the law has long recognized the existence of oral partnership agreements.[16] *Malone v. Patel*, 397 S.W.3d 658, 674–75 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Ingram v. Deere,* 288 S.W.3d 886, 894-97 (Tex. 2009)). Under long-standing common law principles, which have since been codified, a partnership agreement may be either express or implied from the parties' conduct. *Ingram,* 288 S.W.3d at 893-94 (citing *Donald v. Phillips,* 13 S.W.2d 74, 76 (Tex. 1929)). When an express agreement does not exist, the question of whether the parties intended to enter into a partnership must be "determined by an examination of the totality of the circumstances." *Ingram,* 288 S.W.3d at 903-904.

Section 152.051 of the Texas Business Organizations Code, which was in effect in July of 2009 when the parties allegedly entered into their partnership, provides that: an "association of two or more persons to carry on a business for profit as owners creates a partnership, regardless of whether: (1) the persons intend to create a partnership; or (2) the association is called a

---

[16] We note that the failure to reduce an agreement to writing (as well as any proffered explanation for that failure) is relevant for the jury's consideration but is not dispositive of the existence of a partnership agreement. *Malone v. Patel,* 397 S.W.3d 658, 674–75 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Ingram v. Deere,* 288 S.W.3d 886, 894-97 (Tex. 2009).

28

'partnership,' 'joint venture,' or other name." TEX. BUS. ORGS. CODE ANN. § 152.051; *see also Ingram*, 288 S.W.3d at 894-95.[17] The Code sets forth five factors that a court should review in determining whether a partnership exists: "(1) receipt or right to receive a share of profits of the business; (2) expression of an intent to be partners in the business; (3) participation or right to participate in control of the business; (4) agreement to share or sharing: (A) losses of the business; or (B) liability for claims by third parties against the business; and (5) agreement to contribute or contributing money or property to the business." TEX. BUS. ORGS. CODE ANN. § 152.052(a); *see also Ingram,* 288 S.W.3d at 894–95; *Rojas v. Duarte,* 393 S.W.3d 837, 841–46 (Tex. App.—El Paso 2012, pet. denied) (discussing similar factors under the TRPA).

Under the Code, a party seeking to establish the existence of a partnership is not required to provide evidence of all five factors; in particular, the Code expressly provides that an agreement to share losses is not necessary to create a partnership. TEX. BUS. ORGS. CODE ANN. § 152.052(c). The Code further provides that evidence of only one factor standing alone is not sufficient to establish a partnership in a business. TEX. BUS. ORGS. CODE ANN. § 152.052. However, as the Court in *Ingram* explained, evidence of all five factors establishes a partnership as a matter of law, and therefore, the five-factor test is considered on a "continuum" between these two points. *Ingram*, 288 S.W.3d at 893-94, 896; *see also Rojas,* 393 S.W.3d at 846 (noting that the evidence, or lack thereof, in support of the five factors is considered on a continuum).

---

[17] In *Ingram*, the reviewing court discussed the provisions of the TRPA, the predecessor statutes to the Texas Business Organizations Code; however, as *Ingram* noted, the provisions relating to the definition of a partnership and the factors to be used in determining whether partnership exists are virtually identical under the TRPA and the Code. *Ingram*, 288 S.W.3d at 894 n.4. Therefore, we rely on the analysis of *Ingram* here, when applicable.

29

Based on this statutory framework, we next consider whether Houle presented more than a scintilla of evidence to establish the factors indicative of a partnership.

### 1. *Profit Sharing*

With his affidavit supported by the memo dated July 6, 2010, Houle presented evidence indicating that the parties had an agreement to share equally in profits after renovations were completed and after Casillas was reimbursed for his investment.[18]  Although the partnership ended before any profits were shared, we find that the undisputed summary judgment evidence demonstrated that the parties had agreed they would share profits when profits were earned.  We therefore conclude that this factor supports a finding that a partnership existed.  *See, e.g., Rojas,* 393 S.W.3d at 841-42 (where the evidence demonstrated that the parties intended to share profits in the future, this supported a finding that a partnership existed even though the parties had not yet started sharing profits).

### 2. *Expression of Intent to Be Partners*

The Texas Business Organizations Code expressly provides that a partnership may be found even though the parties may not have expressly intended to create a partnership, and regardless of whatever name they use to describe their relationship.  TEX. BUS. ORGS. CODE ANN. § 152.051; *see also Ingram* 288 S.W.3d at 894-95.  Therefore, direct proof of the parties' intent to form a partnership is not needed.  *Ingram*, 288 S.W.3d at 895-96; *see also Tubb v. Aspect Int'l, Inc.,* No. 12-14-00323-CV, 2017 WL 192919, at *9 (Tex. App.—Tyler Jan. 18, 2017, pet. denied) (mem. op.) (citing TEX. BUS. ORGS. CODE ANN. §§ 152.051(b)(1) and 152.052(a)(2)).

---

[18] In fact, the original petition filed by Casillas on behalf of Casco, indicated that the "rents would be split evenly between" Houle and Casco, after Casillas was reimbursed for his investment.

Nevertheless, the question of whether the parties made a direct expression of their intent is one factor, albeit not a necessary one, which can be used to establish the existence of a partnership.[19]  *Ingram*, 288 S.W.3d at 900.  In determining whether a direct expression was made, a court may look to the "partners' speech, writings, and conduct" to see if such an intent has been expressed, although "there must be evidence that both parties expressed their intent to be partners."  *Id.* at 899-900.  The Court noted that, "[e]vidence of expressions of intent could include, for example, the parties' statements that they are partners, one party holding the other party out as a partner on the business's letterhead or name plate, or in a signed partnership agreement."  *Id*. at 900 (citing *Reagan v. Lyberger,* 156 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.)); *see also Rojas,* 393 S.W.3d at 842 (finding evidence of an expression of intent where three witnesses testified that they heard both parties introduce themselves as partners in different business settings).

Here, we see only one mention of the term "partner" in the communications between the parties.  In the July 6, 2010 memo, Casillas complained that Houle was making unilateral decisions regarding "how to do things" during the renovations, and he further asserted that he was "not a 'Silent Partner' as [Houle] called [him] once."  Although this indicates that Houle—at some point in their relationship—expressed to Casillas that he considered him to be a partner, there is no evidence that Casillas similarly expressed any such intent to Houle or to anyone else.  We

---

[19] *Ingram* noted, "[r]eferring to a friend, employee, spouse, teammate, or fishing companion as a 'partner' in a colloquial sense is not legally sufficient evidence of expression of intent to form a business partnership."  *Ingram*, 288 S.W.3d at 900 (citing *Murphy v. McDermott Inc.,* 807 S.W.2d 606, 613 (Tex. App.—Houston [14th Dist.] 1991, pet. denied) (explaining that although one party referred to the other party as his partner, this alone did not create a partnership)).

31

therefore conclude that the record does not contain evidence that both parties made a direct expression of their intent to form a partnership.

### 3. Control

The third factor under the analysis is participation in or right to participate in control of the business, which this Court has noted is one of the most important factors in determining whether a partnership exists. *Rojas*, 393 S.W.3d at 843. As this Court has recognized, "[t]he right to control a business is the right to make executive decisions." *Id.* (citing *Ingram,* 288 S.W.3d at 901). As we have further recognized, "[s]everal sub-factors are relevant to concluding that a party has the right to make executive decisions, including: (1) the exercise of authority over the business's operation; (2) the right to write checks on the business's checking account; (3) control over and access to the business's books; and (4) the receipt of and management of all of the business's assets and monies." *Id.* at 843 (citing *Ingram*, 288 S.W.3d at 901–02).

Here, Houle's affidavit and Casillas' July 6, 2010 memo indicate that the parties handled their arrangement informally. We note additionally that there is no direct evidence that the partnership maintained any "books" or a "checking account." Nonetheless, we find clear evidence that the parties both controlled various aspects of the business's operation, and both exercised control over its assets and monies. The undisputed summary judgment evidence demonstrates that Houle and Casillas jointly made the decision to purchase the Pershing Property, decided how to finance the property, and agreed to form an LLC for the purpose of protecting their personal interests. In addition, the undisputed evidence demonstrates that the two men jointly decided how they would divide up their responsibilities, with Casillas providing the financing for the project, and Houle providing his expertise and management skills in overseeing the

32

renovations; moreover, the undisputed evidence establishes that for the first year of the project, the parties communicated regularly, with Houle submitting requests for reimbursements, and Casillas approving those requests.

On this record, we find there is more than a scintilla of evidence that the parties made executive decisions together and exercised joint control over the operation of the partnership. *See, e.g.*, *Nguyen v. Hoang*, 507 S.W.3d 360, 373 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (finding that all parties participated in exercising control over the business of their partnership, where they jointly made decisions regarding the purchase of property and the method of the purchase, decided when to sell property and the terms of sale, and agreed upon who would operate the property and who would receive salaries and how much salary each would receive); *see also Price v. Wrather,* 443 S.W.2d 348, 351–52 (Tex. App.—Dallas 1969, writ ref'd n.r.e.) (noting that a party could control a business by receiving and managing all of the business's assets and monies); *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704, 710 (1956) (noting that evidence of control of a business could be found in the exercise of authority over the business's operations).

The fact that the parties may have effectively controlled different aspects of the business operations does not foreclose a finding that they both had the right to make, and did in fact make, executive decisions about those operations. *See, e.g., Rojas*, 393 S.W.3d at 843 (finding evidence of "control" one party was considered "management," but the two parties nevertheless made decisions collaboratively, such as the decision to purchase a certain property, and both parties had access to the business's finances). We therefore conclude that this factor supports a finding that a partnership existed.

### 4. *Sharing of Losses and Liability for Third Party Claims*

Under the Texas Business Organizations Code, an agreement to share losses although a factor in the analysis, is not necessary to create a partnership. TEX. BUS. ORGS. CODE ANN. § 152.052(c); *see also Ingram*, 288 S.W.3d at 901. In the present case, while the parties did agree to share profits equally after Casillas was reimbursed, there is nothing in the record to suggest that they also agreed to share equally in the losses or liabilities of the partnership. Therefore, although this factor is not necessary to the creation of a partnership, we conclude that it weighs against finding a partnership.

### 5. *Contribution of Money or Property*

The final factor under the Texas Business Organizations Code, considers whether the parties agreed to contribute money and/or property to the partnership. TEX. BUS. ORGS. CODE ANN. § 152.052(A)(5); *see also Ingram*, 288 S.W.3d at 902 (noting that under the TRPA, "property" was defined as "all property, real, personal, or mixed, tangible or intangible, or an interest in that property").

Here, the undisputed evidence demonstrated that the parties agreed that Casillas would contribute money to fund the project by extending a loan to the LLC to purchase and renovate the Pershing Property, while Houle would contribute by offering his skills and services. We have no trouble finding that Casillas' agreement to lend money to fund the project was the equivalent of contributing money to the partnership. *See generally Hoss v. Alardin*, 338 S.W.3d 635, 647 (Tex. App.—Dallas 2011, no pet.) (recognizing that loans of money can constitute contributions to the business under the TRPA) (citing *Reagan,* 156 S.W.3d at 928).

Although not quite as clear, we also conclude that Houle's agreement to lend his labor and time to oversee or supervise the renovations of the Pershing Property, was the equivalent of

34

contributing money or property to the partnership. In reaching this conclusion, we recognize that if Houle had simply been an employee of the company, and only contributed his services in that capacity, this would not result in a finding that he contributed anything of value to the partnership itself. *See Ingram*, 288 S.W.3d at 903 (noting that although employees may contribute to a business endeavor by lending their time and reputation, this is not a contribution to the venture indicative of a partnership interest). However, the undisputed summary judgment evidence established that Houle was not serving in an employee capacity during the renovations, and that he instead contributed his time and skills, or in other words his "sweat equity" in furtherance of the partnership itself. We find this to be sufficient to constitute a contribution to the partnership under the Code. *See, e.g., Tubb*, 2017 WL 192919, at \*9 (finding that the agreement of a party to lend his name and reputation to a business venture could be considered a contribution of property to support the creation of a partnership); *Estate Land Co. v. Wiese*, No. 14-13-00524-CV, 2015 WL 1061553, at \*7 (Tex. App.—Houston [14th Dist.] March 10, 2015, pet. denied) (mem. op.) (upholding the trial court's determination that a party's contribution of "sweat equity" towards a project was sufficient to support a finding of partnership); *Malone,* 397 S.W.3d at 678 (party's unpaid work, time and effort in starting up a company, which he considered to be his "sweat equity," could be considered as evidence of his contribution to the company); *see generally Black v. Redmond,* 709 Fed. Appx. 766, 770 (5th Cir. 2017) (noting that a party's contribution of "know-how and sweat equity" to a partnership could be considered a contribution to the partnership for which he was entitled to reimbursement). We therefore conclude that this factor supports a finding that a partnership existed.

### *Conclusion*

35

We conclude that the record contains more than a scintilla of evidence in support of three of the five factors for establishing a partnership under the Texas Business Organizations Code: (1) an agreement to share profits, (2) control over the enterprise, and (3) a contribution of money and property to the enterprise by both parties. Given that these factors are generally recognized as being the most dispositive and important factors of the analysis, we further conclude that there is sufficient evidence to raise a factual question regarding the existence of a partnership between the parties. Because partners owe each other fiduciary duties, we turn next to determine whether the evidence also raises a question of fact on a breach of their fiduciary duties.

**Breach of Fiduciary Duties and Duty of Good Faith and Fair Dealing**

Assuming that a fiduciary relationship did exist, we must next determine whether Houle presented more than a scintilla of evidence to raise a question of fact on the issue of whether Casillas breached his fiduciary duties including his duty of good faith and fair dealing. Houle argues that his affidavit, which chronicled Casillas' conduct, starting with Casillas' decision to stop funding the renovations, his subsequent decision to sign a promissory note to himself and to take out a second deed of trust on the Pershing Property, without notice to Houle, and his steps taken to foreclose on the property, without considering any interest that Houle may have had in the property, all raised a question of fact on whether Casillas breached his fiduciary duties.[20] We agree.

---

[20] Houle argues that Casillas' fraudulent intent or scheme can be found in his July 6, 2010 memo, in which he repeatedly states that he believed he owned the property, asserting that Casillas was in effect telegraphing his intent to obtain the property for himself. We do not necessarily read Casillas' memo in such a harsh light, as it can be fairly read instead as Casillas expressing his concerns about the security of his investment in the property and otherwise reminding Houle that he held the original deed of trust on the property for which he was entitled to foreclose.

36

In general, partners owe each other a strict duty of good faith and candor, as well as a duty to one another to make full disclosure of all matters affecting the partnership and to account for all partnership profits and property. *Zinda v. McCann St., Ltd.,* 178 S.W.3d 883, 890–91 (Tex. App.—Texarkana 2005, pet. denied) (citing *Brosseau v. Ranzau,* 81 S.W.3d 381, 394 (Tex. App.—Beaumont 2002, pet. denied)). The evidence that Casillas engaged in a course of conduct with regard to clearly significant matters affecting the partnership, such as signing the promissory note and deed of trust without notice to Houle, and subsequently foreclosing on the subject property, without considering any of Houle's interests, was sufficient to raise a question of fact with respect to whether Casillas breached his fiduciary duties to Houle including his duty of good faith and fair dealing.

In reaching this conclusion, we note that Casillas, at some point, could have taken steps to foreclose on the original deed of trust and/or to end the partnership if he believed that Houle was not fulfilling his obligations. *See, e.g*., *Bohatch*, 977 S.W.2d at 545 (quoting *Gelder Med. Group v. Webber,* 41 N.Y.2d 680, 394 N.Y.S.2d 867, 870–71, 363 N.E.2d 573, 577 (1977)) (recognizing that even though partners owe each other a fiduciary duty, they have "no obligation to remain partners," because, at the "heart of the partnership concept is the principle that partners may choose with whom they wish to be associated"); *see also Bendalin v. Youngblood & Associates*, 381 S.W.3d 719, 738 (Tex. App.—Texarkana 2012, pet. denied); *LG Ins. Mgmt. Services, L.P. v. Leick*, 378 S.W.3d 632, 643 (Tex. App.—Dallas 2012, pet. denied). However, in exiting the partnership, Casillas was required to do so in a manner that was consistent with fiduciary duties owed to Houle and consistent with the terms of the parties' partnership agreement. *See generally Bohatch*, 977 S.W.2d at 547 (holding that a partner who was expelled from a partnership was entitled to damages

37

where the partnership reduced her tentative distribution for that year to zero without requisite notice to her in violation of the partnership agreement). We believe that a question of fact exists on the issue of whether Casillas acted in accordance with his obligations by essentially terminating the partnership agreement in the manner in which he did.

**Evidence of an Injury Resulting from the Breach**

And finally, we must next determine whether Houle provided sufficient evidence to respond to Casillas' claim in his motion that Houle had no evidence to support a finding that he suffered "any injury" as a result of any alleged breach of fiduciary duties, and/or that Casillas obtained a "benefit" as a result of any breach. Houle's response was weakest on this issue, with Houle's affidavit asserting a general claim that he was injured when Casillas took control over the Pershing Property for himself alone through his allegedly fraudulent course of conduct, thereby depriving Houle of his "interest" in the property, and without compensating Houle for the work that he performed in improving the property over the course of the year-long renovations. In his affidavit, Houle provided no information regarding the amount of any damages he had suffered as a result of the breach, and in particular, he did not provide any evidence of what he believed the value of his "interest" in the property was and/or the value of the services he contributed to the partnership for which he was not reimbursed.

Nevertheless, we conclude that Houle's affidavit provides at least a scintilla of evidence to raise a question of fact on the issue of whether he did in fact suffer an injury as a result of Casillas' conduct. In reaching this conclusion, we find it significant that in his motion for summary judgment, Casillas only argued in very general terms that Houle had no evidence to establish that Houle had suffered any injury as a result of Casillas' alleged breach or that Casillas benefitted

38

from such a breach. More importantly, we note that in his first motion for summary judgment—unlike his second motion to be discussed next—Casillas did not challenge Houle to provide evidence pertaining to the economic value of his alleged injury and/or the economic value of the benefit that Casillas received.

As we recently discussed, it is critical for a party moving for summary judgment to provide the non-movant with notice of the elements that are being challenged so that the non-movant will know how to respond. *See, e.g., Pineda,* 535 S.W.3d at 156 (citing TEX. R. CIV. P. 166a(i); *Timpte Industries, Inc. v. Gish,* 286 S.W.3d 306, 310 (Tex. 2009); *Wade Oil & Gas*, 417 S.W.3d at 540). The requirement that a moving party identify the element upon which it is moving for summary judgment "serves the purposes of providing adequate information to the opposing party by which it may oppose the motion and defining the issues to be considered for summary judgment." *Id.* at 157 (citing *Gish*, 286 S.W.3d at 311 (quoting *Westchester Fire Ins. Co. v. Alvarez,* 576 S.W.2d 771, 772 (Tex. 1978)). As Casillas only challenged Houle to come forward with evidence of an alleged "injury," we do not believe that this would have put Houle on notice that he needed to provide an accounting of the monetary amount of the injury that he suffered. And as set forth above, Houle simply responded in kind by providing evidence, albeit in general terms, regarding the nature of his injury.

Moreover, we note that in the present case, Houle did not simply seek monetary damages for Casillas' alleged breach of fiduciary duty, and instead also requested equitable relief, such as a "Declaratory Judgment declaring the rights of the parties and imposing a constructive trust" on the subject property, based on Casillas' allegedly fraudulent conduct in taking the property for himself. In analogous situations, the Texas Supreme Court has held that when a plaintiff seeks

39

equitable relief for the breach of fiduciary duty, the plaintiff does not necessarily need to present evidence of actual damages stemming from the breach. *See, e.g.*, *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220-21 (Tex. 2017) (referring to laws on agency and trust relationships, the Court held that a client of an attorney who allegedly took money from the client's trust fund account was not required to prove actual damages for the attorney's breach of his fiduciary duties, as the client was entitled to equitable relief, including the forfeiture or disgorgement of any benefit obtained by the attorney as the result of his breach); *see also Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942) (holding that the plaintiff, who established that the defendant breached a fiduciary duty and obtained a "secret gain or benefit" from a third party while serving as the plaintiff's agent, was entitled to equitable relief requiring the defendant to account to his principal for all he has received).

Accordingly, for the reasons set forth above, we conclude that Houle provided at least a scintilla of evidence to raise a question of fact regarding whether Casillas owed him a fiduciary duty, whether that duty was breached, and whether he was injured by the breach and/or whether he was entitled to the equitable relief requested in his pleadings. We therefore conclude that the trial court erred by granting Casillas' motion for summary judgment on Houle's cause of action for breach of fiduciary duty and the implied covenant of good faith and fair dealing.

### B. Houle's Claim for Unjust Enrichment

Houle next argues that the trial court erred by dismissing his claim for unjust enrichment. And, as set forth above, in response to Houle's argument, Appellees' brief does no more than proclaim, in a single sentence, that Houle did not come forward with evidence to support his claim for unjust enrichment. We agree with Houle on this issue.

40

**The Law on Unjust Enrichment**

A claim for relief under a theory of "unjust enrichment" is an equitable concept that arises in situations in which another person has "wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Eun Bok Lee v. Ho Chang Lee,* 411 S.W.3d 95, 111–12 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied)); *see also Kohannim v. Katoli*, 440 S.W.3d 798, 813 (Tex. App.—El Paso 2013, pet. denied), *disapproved of on other grounds by Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014) (citing *Heldenfels Brothers, Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 43 (Tex. 1992) ("Unjust enrichment demands restitution when a party receiving property or benefits would be unjustly enriched if it were permitted to retain the property or benefits at the expense of another.")). A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Kohannim*, 440 S.W.3d at 813 (citing *Heldenfels Brothers,* 832 S.W.2d at 41).

Recovery under a theory of unjust enrichment is based on quasi-contract, and therefore, when a valid, express contract covers the subject matter of the parties' dispute, there can generally be no recovery under this theory, as allowing such recovery would be inconsistent with the parties' express agreement. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000); *see also In re Kellogg Brown & Root, Inc*., 166 S.W.3d 732, 740 (Tex. 2005) ("A party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished."); *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ) (the unjust enrichment doctrine applies the principles of restitution to disputes which are

not governed by a contract between the contending parties). However, when a person has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon that person to restore the benefits to the plaintiff. *Eun Bok Lee,* 411 S.W.3d at 111–12 (citing *Burlington N. R.R. Co. v. Sw. Elec. Power Co.,* 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd sub nom., Sw. Elec. Power Co. v. Burlington N. R. R. Co.,* 966 S.W.2d 467 (Tex. 1998)). A plaintiff may also recover under this equitable doctrine if a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons. *Id.* (citing *French v. Moore,* 169 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2004, no pet.)).

As a preliminary matter, we note that in his live pleading, Houle pleaded both a claim for breach of contract and a claim for equitable relief under the quasi-contract theory of unjust enrichment. Therefore, as explained above, Houle would not be permitted to obtain relief on both claims; nevertheless, we conclude that he was entitled to plead both claims for relief, in the alternative, allowing him the opportunity to seek relief on his quasi-contract claim if a jury rejected his claim for breach of contract. *See generally* 58 Tex. Jur. 3d Pleading § 129 (recognizing that a pleader may set forth two or more statements of a claim, alternatively or hypothetically, either in one count or in separate counts, and that a party may state as many separate claims as it has, regardless of consistency, and whether based on legal or equitable grounds or both). Further, we conclude that Houle provided at least a scintilla of evidence in response to Casillas' motion for summary judgment to raise a question of fact regarding whether Casillas was unjustly enriched by his allegedly fraudulent conduct.

First, the evidence clearly supports a finding that Houle provided a substantial amount of his time and effort toward renovating the Pershing Property pursuant to the parties' agreement. As described above, Houle's affidavit, as well as Casillas' July 6, 2010 memo, demonstrate that Houle spent approximately one year contributing his time and efforts into renovating the property. Second, Houle attached a spreadsheet to his affidavit, chronicling the various improvements that were made to the property during the year-long renovation project. As well, although the parties' dispute exactly how much improvements were made to the property, in his verified original petition in this matter, which was filed on June 29, 2011, Casillas acknowledged that after Houle worked on the project for a year, at least two of the units at the building had been completely renovated and were being rented out. We consider this to be a judicial admission that the property was in fact improved to some extent during the year-long project. *See generally In re A.E.A.*, 406 S.W.3d 404, 410 (Tex. App.—Fort Worth 2013, no pet.) (factual allegations in live pleadings constitute a judicial admission of the facts alleged and relieves the opposing party from the requirement of putting on proof of the admitted fact); *see also Trinity Drywall v. Toka Gen. Contrs.,* 416 S.W.3d 201, 213 (Tex. App.—El Paso 2013, pet. denied) (in a party's live pleadings, assertions of fact that are not pleaded in the alternative are regarded as formal judicial admissions) (citing *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex. 2001)). Third, although Casillas denied any wrongdoing, Houle's affidavit provides support for his theory that Casillas engaged in a fraudulent course of conduct by which he took sole possession of the Pershing Property through the foreclosure sale, without compensating Houle for any of the work that he performed in improving the property and/or without regard to any interest that Houle may have had in the property.

Therefore, we conclude that there was sufficient evidence in the record to raise a question of fact on the issue of whether Casillas, by taking the improved property without compensation to Houle, "wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Eun Bok Lee*, 411 S.W.3d at 111. Accordingly, we conclude that the trial court erred by granting summary judgment in Appellees' favor on Houle's claim for unjust enrichment. Issue Two is sustained.

## ISSUE THREE: THE SECOND MOTION FOR SUMMARY JUDGMENT AND HOULE'S SECOND AFFIDAVIT

After the trial court declared a mistrial pertaining to Houle's remaining two causes of action for fraud and breach of contract, and after a new trial court judge was appointed to hear those claims, Casillas filed a second motion for summary judgment seeking dismissal of remaining claims, but this time primarily focusing on the element of damages. Although Houle responded with a second affidavit providing more details on his factual allegations, including his claim for damages, the trial court sustained Casillas' objections to the affidavit, and struck substantial portions of the affidavit, leaving him with little evidence to support his claim for damages. Thereafter, the trial court granted Casillas' motion for summary judgment, dismissing Houle's two remaining claims. In two separate, but related issues, Houle claims that the trial court erred in granting Casillas' objections to his affidavit, and contends that if the trial court had not granted the objections, his affidavit would have provided sufficient summary judgment evidence to rebut the motion for summary judgment.

Once again, Casillas does not address the merits of Houle's arguments, and instead argues that Houle did not adequately brief this issue, as Houle did not address each of the objections that the trial court granted, and did not provide adequate record cites with respect to the objections.

44

We note, however, that in his amended brief, Houle did provide adequate record cites, and addressed each category of objections that Casillas made to his affidavit. We find this sufficient to enable our review on appeal.

We start our analysis by reviewing the summary judgment evidence that Houle presented in support of his claim that he suffered damages as a result of Casillas' alleged breach of contract.

## A. The Breach of Contract Claim

The four elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Velvet Snout, LLC v. Sharp,* 441 S.W.3d 448, 451 (Tex. App.—El Paso 2014, no pet.) (citing *McCulley Fine Arts Gallery, Inc. v. "X" Partners,* 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ)). The last element encompasses a causation requirement. *Id*. (citing *Pagosa Oil and Gas, L.L.C. v. Marrs and Smith Partnership,* 323 S.W.3d 203, 215 (Tex. App.—El Paso 2010, pet. denied)). Specifically, the evidence must show that the damages are the "natural, probable, and foreseeable consequence" of the defendant's conduct. *Id*. (citing *Prudential Securities, Inc. v. Haugland,* 973 S.W.2d 394, 397 (Tex. App.—El Paso 1998, pet. denied)).

Here, Casillas' motion for summary judgment only challenged the damages element of Houle's claim for breach of contract. Casillas alleged that the parties had agreed to purchase and renovate the property, with Casillas providing the funding and Houle supervising the renovation, and to then sell the property, splitting any profits evenly after Casillas was reimbursed for his investment. Casillas then argued that the undisputed evidence demonstrated that he was entitled to be reimbursed for well over $150,000, and whereas the undisputed evidence demonstrated that

the value of the property would not exceed $150,000, if it were sold to a third party there would have been no profits to split.

In support of his argument, Casillas attached multiple excerpts from Houle's deposition and trial testimony, in which Houle acknowledged that the parties had agreed that he would not be entitled to receive any portion of the profits until after Casillas was reimbursed for his initial investment of $100,000 to purchase the property, and advances that he made for renovations. Casillas also provided a copy of the original promissory note and deed of trust, indicating that he had loaned the LLC $100,000 to purchase the property, and that he was entitled to interest on the loan. Next, Casillas provided excerpts from Houle's testimony acknowledging that Casillas thereafter funded the renovations, and that in all, Casillas had advanced over $45,000 for renovations. In total, Casillas provided a spreadsheet in which he calculated that he was owed a balance totaling $266,824.52 as of February of 2017. And finally, Casillas attached excerpts from Houle's deposition and trial testimony in which he acknowledged that the value of the Pershing Property was approximately $150,000 at various times, beginning in 2011, together with a letter that Houle wrote to the IRS in June of 2013, in which he argued that the value of the property was worth that same amount. Based on this evidence, Casillas argued that the Pershing Property was worth less than what he was owed, and that Houle therefore, by his own admissions, could not prove that he suffered any damages by any alleged breach of contract.

In his response, Houle argued, among other things, that the value of the property was in "flux," and that at most, his prior testimony constituted an estimate of the property's value, and argued that prior to the mistrial, no "firm evidence" of the value of the property had been presented

46

by either party.[21]   More importantly, Houle pointed out that the parties' agreement was not to sell the property, and that the parties had instead decided to renovate the property and thereafter rent out the apartment units, and split any profits from the rental income after Casillas had been reimbursed for his investment.   Houle therefore argued that he had suffered an entirely different type of damage, i.e., the loss of a "business opportunity," as outlined with more particularity in his attached affidavit.   In support of his response, Houle submitted a second, more detailed affidavit outlining the parties' agreement to renovate the Pershing Property and to thereafter keep it and rent out the apartment units rather than sell the building, and to split the profits after Casillas was reimbursed for his investment.   In addition, Houle attached the July 6, 2010 memo from Casillas, in which Casillas himself stated that the parties had in fact agreed *not* to sell the building after it was renovated, and to instead lease out the apartment units and split any profits after expenses, and after Casillas was reimbursed for his investment.

In his affidavit, Houle also addressed the issue of damages in great detail, expressing his opinion that based on 2011 rental rates, the property, which had nine units, should be generating income of approximately $63,000, less taxes and various expenses, for a total net annual income that he estimated to be $52,750.[22]   Houle then multiplied that amount by 26.5 years to arrive at a figure of $1,397,875 in "business damages" for this lost business opportunity.   Houle also claimed

---

[21] In his response, Houle also argued that he had evidence to support the elements of ALL of his causes of action, including those previously dismissed.   However, since the second motion for summary judgment only addresses the breach of contract and fraud claims, we need not consider Houle's arguments about his previously-dismissed claims for relief.

[22] In particular, he stated that the three upstairs units in the building would generate monthly income of $1,600, the two full downstairs units would generate monthly income of $900, a garage studio unit would generate monthly income of $350, a ¾ downstairs space would generate monthly income of $700, a side storage/commercial unit would generate monthly income of $500, and a basement unit would generate monthly income of $500, for a monthly total of $5,250.

47

that by taking the property away from the partnership, Casillas had prevented him from managing the property from May of 2011 until the day he signed his affidavit, a period of six years, and that the "market rate" for property management in the area was approximately 6 percent of gross receipts. Using the above-described figures, Houle calculated that he was deprived of approximately $18,990 in property management fees during that time.

In addition, Houle claimed that he had spent approximately 836.75 hours over the course of the year-long renovation in overseeing the work on the project. Valuing his work at $20 an hour, he claimed that the total value of his "sweat equity" amounted to $16,375. In addition, he claimed that he had contributed approximately 96.5 hours in accounting or bookkeeping work on behalf of the partnership, which he valued at $30 an hour for a total of $2,895. As well, Houle claimed that he had approximately $2,000 in unreimbursed expenses to date. In support of this allegation, Houle attached a copy of the spreadsheet chronicling the work that had been performed on the property over the course of the year-long renovation project. And finally, Houle claimed that he had suffered lost wages, as he was unable to find work at a comparable salary to his former positions because future employers were allegedly aware of the pending lawsuit that Casillas had filed against him, which included various fraud allegations.

**Damages Arising from a Lost Business Opportunity**

As a preliminary matter, we note that a plaintiff is generally entitled to contract damages based on lost profits, including lost rental income, from a business venture gone awry, if those losses were the natural, probable and foreseeable consequence of the defendant's conduct, and the plaintiff is able to "show the loss by competent evidence and with reasonable certainty." *See, e.g., Peterson Group, Inc. v. PLTQ Lotus Group, L.P*., 417 S.W.3d 46, 64 (Tex. App.—Houston

48

[1st Dist.] 2013, pet. denied) (citing *ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 876 (Tex. 2010); *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.,* 877 S.W.2d 276, 279 (Tex. 1994)).   If the business for which lost profits are sought is shown to be an ongoing business, then evidence that the business was established and making a profit at the time when the tort was committed is admissible to show lost profits.   *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 366–67 (Tex. App.—Dallas 2005, no pet.) (citing *Turner v. PV Int'l Corp.,* 765 S.W.2d 455, 465 (Tex. App.—Dallas 1988, no pet.).   However, a claim for lost profits will not be denied simply because a business was new, where there are "firmer reasons to expect a business to yield a profit[.]"   *See Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 381–82 (Tex. App.—Fort Worth 2003, pet. denied).

A party seeking to recover lost profits must prove the loss through competent evidence with reasonable certainty.   *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648, 649 (Tex. 1994); *VingCard A.S. v. Merrimac Hospitality Sys., Inc.,* 59 S.W.3d 847, 863 (Tex. App.—Fort Worth 2001, pet. denied).   The requirement of "reasonable certainty" is a flexible one in order to accommodate the myriad circumstances in which claims for lost profits arise.   *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.,* 877 S.W.2d 276, 279 (Tex. 1994); *Szczepanik,* 883 S.W.2d at 649; *VingCard A.S.,* 59 S.W.3d at 863 (at a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained).   Reasonable certainty is not demonstrated when the profits claimed to be lost are largely speculative or a mere hope for success, as from an activity dependent on uncertain or changing market conditions, on chancy business opportunities, or on promotion of untested products or entry into unknown or unproven enterprises.   *Teletron Energy Mgmt., Inc.,* 877

49

S.W.2d at 279; *VingCard A.S.,* 59 S.W.3d at 863. In general, "What constitutes reasonably certain evidence of lost profits is a fact intensive determination." *Szczepanik*, 883 S.W.2d at 649. However, recovery for lost profits does not require that the loss be susceptible of exact calculation. *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010).

We conclude that Houle's affidavit was sufficient to raise a question of fact regarding whether he was deprived of a lost business opportunity, as it provided his opinion and estimates of what his losses were with reasonable certainty, and he explained the objective basis of his estimates. Unlike many of the cases involving a lost business opportunity, this was a relatively simple case involving two factors, i.e., rental rates for similar apartment units in the area, and the market rates for property management. Calculating lost rent or lost wages does not require speculation, and instead, can be calculated based on objective facts and data. As such, we conclude that Houle's affidavit provided a legitimate basis for calculating damages based on his theory of a lost business opportunity.

However, as set forth above, the trial court sustained several objections that Casillas made to the affidavit, and therefore much of the information that Casillas provided regarding his alleged damages was stricken, which we assume led the trial court to grant Casillas' motion for summary judgment. Therefore, we must next determine whether the trial court erred in this regard.

### 1. The Law on Summary Judgment Affidavits

The Texas Rules of Civil Procedure provide that both "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f); *see also Concierge Nursing Ctrs., Inc. v. Antex Roofing, Inc.*, 433 S.W.3d

50

37, 50 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In addition, to prove facts through the affidavit testimony of an interested witness, the witness's testimony must be uncontroverted, clear, positive, direct, credible, free from contradiction, and susceptible to being readily controverted. TEX. R. CIV. P. 166a(c). Testimonial statements by an interested witness that meet these requirements may be the basis for a summary judgment.[23] *Id.*; *see also Casso v. Brand,* 776 S.W.2d 551, 558 (Tex. 1989).

However, conclusory statements are not credible or susceptible to being readily controverted, and therefore will not support a summary judgment. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex. 1996); *see also Concierge Nursing Ctrs., Inc.,* 433 S.W.3d at 50 (conclusory statements in affidavits are incompetent to support the rendition of summary judgment as a matter of law). Similarly, affidavits consisting only of conclusions are insufficient to raise an issue of fact in response to a motion for summary judgment. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex. 1984). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Residential Dynamics, LLC v. Loveless,* 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.) (citing *Haynes v. City of Beaumont,* 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.)); *see also Concierge Nursing Ctrs., Inc.*, 433 S.W.3d at 50 (conclusory means expressing a factual inference without stating the underlying facts in which the inference is based).

---

[23] As a preliminary matter, Houle argues on appeal that Rule 166a does not apply to affidavits filed in opposition to motions for summary judgment, and that the Rule only applies to affidavits attached in support of motions for summary judgment. This, however, is not true. As we have previously recognized, affidavits, whether supporting or opposing the motion for summary judgment, must meet the requirements of Rule 166a. *See, e.g., Felhaber*, 2003 WL 22015551, at *1–3.

Parties may raise objections to the form of an affidavit, and in particular may raise the following objections: (1) lack of personal knowledge; (2) hearsay; (3) statement of an interested witness that is not clear, positive, direct, or free from contradiction; and (4) competence. *Rockwall Commons Associates, Ltd. v. MRC Mortg. Grantor Tr. I*, 331 S.W.3d 500, 507 (Tex. App.—El Paso 2010, no pet.) (citing *Broadnax v. Kroger Texas, L.P.,* No. 05–04–01306–CV, 2005 WL 2031783, at *4 (Tex. App.—Dallas August 24, 2005, no pet.) (mem. op.) (citing *Stewart v. Sanmina Texas L.P.,* 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.) (lack of personal knowledge and hearsay), *Choctaw Properties, L.L.C. v. Aledo I.S.D.,* 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.) (interested witness, hearsay, and lack of personal knowledge), *and Rizkallah v. Conner,* 952 S.W.2d 580, 585–86 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (lack of personal knowledge and competence)).

## 2. Houle's Statements Regarding the Parties' Agreement

In order to raise a claim for this lost business opportunity, i.e., the lost profits, the first thing Houle was required to provide evidence to support his assertion that the parties had agreed to not sell the Pershing Property, and to instead keep the property as an ongoing business, and lease out the apartment units. Houle addresses this in his affidavit by describing his understanding of the parties' agreement. Casillas, however, objected to these paragraphs, contending that they contained Houle's "personal opinions," which were not based on facts, and were "biased," and "wholly unsupported by competent facts, evidence or documents." The trial court struck all but one paragraph of Houle's statements regarding his assessment of the parties' agreement, apparently agreeing with Casillas' argument. We disagree with the trial court's conclusion.

As set forth above, even though Houle was a party to the case, and therefore an "interested witness," he was entitled to provide testimony regarding factual matters within his personal knowledge, if uncontroverted, clear, positive, direct, credible, free from contradiction, and susceptible to being readily controverted. TEX. R. CIV. P. 166a(c). In his affidavit, Houle provided clear and direct statements regarding the terms of the parties' agreement, which could have been easily controverted by Casillas. *See generally Republic Nat. Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex. 1986) (statements in affidavit contending that plaintiff had failed to make certain payments on a lease and stating the amount of damages claimed pertained to factual matters that were readily controvertible). Moreover, we note that Casillas did not in fact controvert these statements, and in fact appeared to agree with those terms in his own July 6, 2010 memo to Houle. We therefore conclude that the trial court erred in sustaining Casillas' objection to Houle's recitation of the parties' agreement in his affidavit.

### 3. Houle's Statements Regarding Casillas' Alleged Breach of the Agreement

Second, Casillas objected to several of Houle's statements, in which Houle expressed his belief that Casillas had breached the parties' agreement and acted in a fraudulent manner by unilaterally stopping the funding of the project and thereafter taking steps to "take control of the property." However, the trial court in its order expressly refused to consider those objections, and therefore did not strike any of those statements.

### 4. Houle's Statements that he was Damaged by the Loss of the Pershing Property

The trial court, however, did sustain Casillas' next objection to the paragraphs in which Houle stated that the Pershing Property was the sole asset of the parties' partnership and that he was damaged when Casillas took that property for himself. In his objection, Casillas argued that

"[Houle's] entire argument fails to overcome the statute of frauds in that no written contract exists making the subject property a partnership asset." We do not, however, believe that this is a valid objection to the affidavit, as it does not go to the form of the affidavit, and is instead a legal argument that goes to the merits of Houle's theory of liability.[24] While Casillas arguably could have objected to the form of the affidavit by alleging that Houle was providing an improper legal conclusion, this was not the basis of Casillas' objection, and we therefore decline to address that issue on appeal. *See, generally, Rockwall Commons Associates, Ltd.,* 331 S.W.3d at 507 (defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend).

### 5. Houle's Detailed Estimates of his Damages

And finally, Casillas made multiple objections to Houle's statements in which he provides his estimate of the damages he suffered in terms of his lost business opportunity to receive rental income from the property and/or management fees; his estimate of the value of the work that he put into the renovations and the value of his unreimbursed business expenses; as well as his estimate of his legal fees and other expenses. In particular, Casillas contended that Houle was not an expert witness, and that as a "lay witness" he was "wholly unqualified to render his detailed valuations of the damages which he alleges[;]" that his valuations were "nothing more tha[n] his

---

[24] Casillas' argument appears to be incorrect in any event. First, as set forth above, there is no requirement that a partnership agreement be in writing, and instead, the Texas Business Organizations Code clearly recognizes the existence of oral, informal partnerships. TEX. BUS. ORGS. CODE ANN. § 152.051. Second, the statute of frauds only requires "a contract for the sale of real estate" to be in writing. *See* TEX. BUS. & COM. CODE ANN. § 26.01. In the present case, Houle did not argue that the partnership actually purchased the partnership, and he instead recognizes that the Pershing LLC made the actual purchase and held the legal title to the property. However, as explained above, Houle's theory is that the parties created the LLC simply as a means of effectuating the partnership and protecting them from personal liability, but that the Pershing Property itself was an asset that belonged to the partnership, and was inextricably tied to the partnership's very purpose and existence.

54

biased, self-serving, personal opinions," and his claim of damages was not supported by "any documentation or other evidence[.]" The trial court granted all of these objections and struck the entire portion of the affidavit in which Houle testified about the measure and amount of his estimated damages.

As a preliminary matter, we note the Texas Rules of Evidence permit opinion testimony from lay witnesses as well as expert witnesses. *Health Care Serv. Corp. v. E. Texas Med. Ctr.,* 495 S.W.3d 333, 338 (Tex. App.—Tyler 2016, no pet.) (citing TEX. R. EVID. 701, 702). The personal experience and knowledge of a lay witness may establish that the witness is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge. *Id.* (citing *Hathcock v. Hankook Tire Am. Corp.,* 330 S.W.3d 733, 747 (Tex. App.—Texarkana 2010, no pet.)). It is only where the fact finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert. *Id.*

Therefore, "Texas courts regularly allow business owners and company officers to testify as lay witnesses, based on knowledge derived from their positions and any other relevant experience." *Id*. at 338-39 (citing *Am. Heritage, Inc. v. Nev. Gold & Casino, Inc.,* 259 S.W.3d 816, 827 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (former chief financial officer testified about lost profits); *Lamajak, Inc. v. Frazin,* 230 S.W.3d 786, 797 (Tex. App.—Dallas 2007, no pet.) (business owner testified about value of services he provided to retail chain); *SAS & Assoc., Inc. v. Home Mktg. Servicing, Inc.,* 168 S.W.3d 296, 302 (Tex. App.—Dallas 2005, pet. denied) (sole shareholder, director, and officer testified about reasonable cost of repairing company's damaged personal property)). However, such opinion testimony is limited to those opinions or

inferences that are rationally based on the lay witness's perceptions and in situations in which the testimony is helpful to clearly understanding their testimony or determining a fact in issue. *Id*. (citing TEX. R. EVID. 701).

Here, as Houle points out, this issue was addressed, at least in part, by the first judge hearing the case, who ruled prior to trial that even though Houle had not been designated as an expert witness, he would be allowed to testify at trial as a lay witness on the issue of the value of the Pershing Property and his damages. After the mistrial, we recognize that the newly appointed judge was, of course, entitled to come to a different conclusion. Nonetheless, we believe it was improper for the trial court to make the determination that Houle was not qualified to testify as a lay witness based solely on Casillas' bald statement that Houle was a "lay witness wholly unqualified to render" his opinion on damages. Casillas provided no argument or legal authorities for the proposition that Houle was not qualified to testify as a lay witness; in particular, he did not explain why Houle, who averred that he had personal knowledge and experience in business and real estate, could not testify on the question of how much an apartment that he himself renovated would rent for, or why he could not express an opinion regarding the market rates for property managers in the area. Further, Casillas did not explain why Houle would not have had personal knowledge of the value of the work that he performed in renovating the project, the value of his accounting and bookkeeping work, or the business expenses he incurred for which he had not been reimbursed. We therefore conclude that the trial court erred by sustaining Casillas' unsupported objection to Houle's statements in his affidavit.

We also note that Casillas alleged, and the trial court agreed, that Houle's estimates of his damages were improper because they were not supported by "documentation or other evidence."

56

Casillas, however, did not cite any legal authority for the proposition that damages estimates must in all instances be supported by documentary evidence, nor are we aware of any. To the contrary, the Texas Supreme Court has held that when a witness testifies as to his estimate of the damages suffered by the loss of a business opportunity, it is not necessary to produce in court the documents supporting the opinions or estimates, although the lack of such documentation may affect the weight of the testimony. *See, e.g., Swinnea*, 318 S.W.3d at 876 (citing *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992)).

And finally, we note that Casillas objected to the spreadsheet that Houle attached to his affidavit in which he set forth the amount of work that was done on the Pershing Property during the year that he supervised the renovations, on the ground that Rule 166a(f) requires "sworn or certified copies of all papers or parts of papers referred to in an affidavit." Although it is not entirely clear, it appears that the trial court sustained that objection as well. We find this decision to be in error.

As the Supreme Court has recognized, "copies of documents which are attached to a properly prepared affidavit are sworn copies within the meaning" of the Rule's requirements. *Schindler*, 717 S.W.2d at 607 (citing *Zarges v. Bevan,* 652 S.W.2d 368, 369 (Tex. 1983); *Life Insurance Company of Virginia v. Gar-Dal, Inc.,* 570 S.W.2d 378, 380 (Tex. 1978)). Thus, where an affidavit states that the attached documents are true and correct copies of the originals, and the affidavit itself is properly sworn, the trial court may consider the attached documents as proper summary judgment evidence. *Id*.; *see also Landry's Seafood Restaurants, Inc. v. Waterfront Cafe, Inc.,* 49 S.W.3d 544, 551 (Tex. App.—Austin 2001, pet. dism'd) (recognizing that copies of documents attached to a properly prepared affidavit are sworn copies within the meaning of Rule

166a(f)).   In his affidavit, Houle expressly stated that "[t]he facts stated herein and in Exhibits A [the spreadsheet] and C are true and correct of my own personal knowledge."   As such, we conclude that the trial court erred by sustaining Casillas' objection to this exhibit.

In conclusion, we find that Houle provided clear and direct testimony explaining how he arrived at his calculation of damages, explaining in detail the metrics he used in arriving at his estimate.   As well, his statements pertaining to the market rate for rents and property management, as well as his estimates of the value of the work he performed, were all easily controvertible, and therefore constituted admissible summary judgment evidence under TEX. R. CIV. P. 166a(c).   We therefore conclude that the trial court erred in striking these statements from Houle's affidavit, and as expressed above, we believe that the affidavit, as submitted by Houle in its original form, provided at least a scintilla of evidence to support the damages element of his claim for breach of contract.   Accordingly, we conclude that the trial court erred in granting summary judgment on Houle's claim for breach of contract.

## B.  **Actual and Constructive Fraud**

Houle also argues that the trial court erred by granting Casillas' motion for summary judgment on his claim for fraud, arguing that his affidavit provided sufficient evidence of the allegedly fraudulent course of conduct in which Casillas engaged.   On appeal, Appellees do not address the merits of Houle's argument, and instead argue that Houle did not provide adequate cites to the record and/or provide adequate citations to legal authorities in his original brief to support his argument, and that Houle therefore waived this issue.

Texas law recognizes two types of common law fraud claims:   actual fraud and constructive fraud.  *In re Estate of Kuykendall,* 206 S.W.3d 766, 770–71 (Tex. App.—Texarkana

58

2006, no pet.) (citing *Chien v. Chen,* 759 S.W.2d 484, 494–95 (Tex. App.—Austin 1988, no writ)). The elements of a claim for actual fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 337 (Tex. 2011) (citing *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)); *see also Sprick v. Sprick,* 25 S.W.3d 7, 15 (Tex. App.—El Paso 1999, pet. denied) (citing *Stone v. Lawyers Title Insurance Corp.,* 554 S.W.2d 183, 185 (Tex. 1977)). A claim for actual fraud therefore involves dishonesty of purpose or intent to deceive. *See TransPecos Banks v. Strobach*, 487 S.W.3d 722, 730 (Tex. App.—El Paso 2016, no pet.) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex. 1986)); *see also Sprick,* 25 S.W.3d at 15.

On the other hand, in a claim for constructive fraud, the actor's intent is irrelevant. *Kuykendall,* 206 S.W.3d at 770–71 (citing *Sprick,* 25 S.W.3d at 15); *see also Chien,* 759 S.W.2d at 495 (citing *Archer v. Griffith,* 390 S.W.2d 735 (Tex. 1965)). Instead, constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. *Strobach*, 487 S.W.3d at 730 (citing *Castleberry*, 721 S.W.2d at 273). As this Court has recognized, constructive fraud occurs when a party violates a fiduciary duty or breaches a confidential relationship. *Holland v. Thompson,* 338 S.W.3d 586, 598 (Tex. App.—El Paso 2010, pet. denied) (citing *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts,*

59

*Inc.,* 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied)); *see also In re Estate of Kuykendall*, 206 S.W.3d at 770–71.

As set forth above, in his motion for summary judgment, Casillas challenged Houle to come forward with evidence to support all elements of his fraud claim, primarily focusing on the question of whether Houle had any evidence to establish that Casillas had made a material and false representation to Houle upon which he intended for him to rely. We agree with Casillas that Houle did not come forward with evidence of any actual misrepresentation that Casillas made to him. Therefore, we conclude that there is no evidence to support a claim for actual fraud.

However, the evidence does raise a question of fact regarding whether Casillas committed constructive fraud. As discussed above, Houle presented evidence in his affidavit to support a conclusion that the parties had entered into an oral partnership agreement for which they owed each other fiduciary duties to include a duty of good faith and fair dealing, a duty of candor, and a duty to make full disclosures to each other. *Zinda*, 178 S.W.3d at 890–91. Houle included facts in his affidavit, which the trial court did not strike, chronicling what he believed was a breach of such fiduciary duties and assertion of conduct which was intended to deceive Houle. As such, we conclude that Houle came forward with at least a scintilla of evidence to raise a question of fact regarding whether Casillas engaged in constructive fraud.

Accordingly, we conclude that the trial court did not err in granting summary judgment on Houle's claim of actual fraud. However, we conclude the trial court erred in granting summary judgment on Houle's claim for constructive fraud. Houle's Issue Three is overruled in part and sustained in part.

**ISSUE FOUR: HOULE'S THIRD AMENDED PLEADING**

Shortly after the mistrial, on February 27, 2017, Houle filed a third amended pleading, which, among other things, appeared to raise the same causes of action (i.e. unjust enrichment and breach of fiduciary duty and duty of good faith and fair dealing), which the trial court had dismissed by summary judgment, as well as a request that the trial court set aside the foreclosure sale. On March 9, 2017, Casillas moved to strike the third amended pleading on the grounds that Houle was seeking to raise previously dismissed causes of action. Ultimately, on May 24, 2017, the trial court granted Casillas' motion to strike the pleading and dismissed it with prejudice.

In his fourth argument, Houle contends that the trial court's order striking his third amended pleading was in error, as he believes the law allows him to file an amended pleading that raises previously dismissed claims. Houle, however, does not cite any legal authority for this proposition nor are we aware of any. To the contrary, as Houle points out, the trial court explained at the hearing on Houle's motion for new trial, that it had struck the third amended pleading because it contained causes of action that were previously dismissed by summary judgment. Houle's only recourse once the trial court dismissed his claims was to raise a challenge to the dismissal by way of direct appeal. We therefore conclude that the trial court did not abuse its discretion in striking the third amended pleading. *See generally Hardin v. Hardin*, 597 S.W.2d 347, 349-50 (Tex. 1980) (holding that a trial court's ruling on an amended pleading is reviewed under an abuse of discretion standard). Houle's Issue Four is overruled.

## CONCLUSION

We affirm the trial court's order to the extent it granted summary judgment to Appellees on Houle's cause of action for actual fraud. However, we reverse the trial court's order to the extent it granted summary judgment to Appellees on Houle's causes of action for breach of

fiduciary duty, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of contract, and constructive fraud. We therefore remand to the trial court for further proceedings consistent with this opinion.

GINA M. PALAFOX, Justice

September 24, 2019

Before Rodriguez, J., Palafox, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment